UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

KENNETH O'BRIEN,

     Petitioner,

v.                                    Case No.  1:16cv382-WTH-CJK

JULIE L. JONES,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

Before the court is an amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 11).  Respondent filed an answer, attaching relevant portions of the state court record.  (Doc. 39).  Petitioner replied.  (Doc. 45).  The matter is referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that petitioner is not entitled to federal habeas relief.

BACKGROUND FACTS[1] AND RELEVANT PROCEDURAL HISTORY

In September 2008, petitioner, then 51 years old, sexually abused an 11-year old boy – the son of James and Pamela Burns (hereinafter "B.B"). Petitioner performed fellatio on B.B. twice in B.B.'s bed, once in the Burns' swimming pool, and once in the Burns' game room. The abuse happened when petitioner was living with the Burns family while renovating their home. Petitioner was a trusted, long-time friend and former coworker of Mrs. Burns. Petitioner was found out on September 14, 2008, when Mr. Burns walked in on him with B.B., just after petitioner had performed fellatio on B.B. Mr. Burns was on his way to bed around midnight when he heard voices coming from B.B.'s bedroom. Mr. Burns approached the closed bedroom door and heard petitioner say, "Does that feel good?". Burns assumed the door was locked and tried to find a key, but was unsuccessful. Mr. Burns returned to the bedroom door intending to break it down, but tried the knob and discovered it was unlocked. Mr. Burns opened the door to find petitioner, naked, lying in B.B.'s bed next to B.B. Petitioner jumped out of bed

---

[1] The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the prosecution. (Doc. 39, Exs. B9-B11 (trial transcript)); *see also Jackson v. Virginia*, 443 U.S. 307 (1979).

and apologized.    Mr. Burns called the police.    (Doc. 39, Exs. B9-B11 (trial transcript)).

Petitioner was charged in Alachua County Circuit Court Case No. 2008-CF-4088, with six counts of capital sexual battery on a person less than 12 years of age. (Ex. B1, pp. 28-29).[2]  A jury found petitioner guilty of all six counts as charged, and he was sentenced to life in prison.  (Ex. B1, pp. 81-82 (written verdict), pp. 83-91 (judgment and sentence)).  The First District Court of Appeal (First DCA) reversed the judgment and remanded for a new trial after concluding the trial court erred in admitting petitioner's confession.  *O'Brien v. State*, 56 So. 3d 884 (Fla. 1st DCA 2011).  After a second jury trial, petitioner was found guilty of four counts as charged – the four instances described above.  (Ex. B1, pp. 165-66 (written verdict)).  The trial court adjudicated petitioner guilty and sentenced him to concurrent terms of life imprisonment without the possibility of parole on each count.  (Ex. B1, pp. 167-73 (judgment and sentence), 185-90 (amended sentence correcting scrivener's error)).  The First DCA affirmed on July 5, 2013, per curiam and without opinion.  *O'Brien v. State*, 115 So. 3d 1006 (Fla. 1st DCA 2013) (Table) (copy at Ex. B17).

---

[2] All references to exhibits are to those provided at Doc. 39, unless otherwise noted.  When a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom center of the page.

On February 19, 2014, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he later supplemented, raising a total of ten claims of ineffective assistance of trial counsel. (Ex. G1, pp. 1-45, pp. 56-72). The state circuit court summarily denied relief. (Ex. G1, pp. 73-206). The First DCA affirmed per curiam without opinion. *O'Brien v. State*, 203 So. 3d 161 (Fla. 1st DCA 2016) (Table) (copy at Ex. G3). The mandate issued November 9, 2016. (Ex. G8).

While his Rule 3.850 proceeding was pending, petitioner filed a *pro se* petition for writ of habeas corpus in the First DCA on December 23, 2014, alleging ineffective assistance of appellate counsel. (Ex. C1). The First DCA denied the petition on the merits on September 28, 2015. *O'Brien v. State*, 175 So. 3d 384 (Fla. 1st DCA 2015) (Table) (copy at Ex. C3).

Also while his Rule 3.850 proceeding was pending, petitioner filed a *pro se* motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a). (Ex. D1, pp. 1-5). The state circuit court denied the motion. (Ex. D1, pp. 6-7). The First DCA affirmed per curiam without opinion. *O'Brien v. State*, 215 So. 3d 63 (Fla. 1st DCA 2016) (Table) (copy at Ex. D2). The mandate issued March 29, 2016. (Ex. D5).

On May 23, 2016, petitioner filed a second motion to correct illegal sentence under Rule 3.800(a).  (Ex. I1).  The state circuit court denied relief on June 1, 2016.  (Ex. I2).  Petitioner did not appeal.  (Ex. A, p. 1).

Petitioner filed his original federal habeas petition on December 23, 2016.  (Doc. 1).  Petitioner's amended petition raises twelve claims.  (Doc. 11).  Respondent asserts that petitioner is not entitled to habeas relief because eleven of his claims are procedurally defaulted, and the single exhausted claim is without merit.  (Doc. 39).  Petitioner's reply voluntarily dismisses seven claims and argues the merits of the remaining five.  (Doc. 45).

## RELEVANT LEGAL PRCINPLES

Exhaustion and Procedural Default

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275 (1971) (citation omitted)).  The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established

appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard*, 404 U.S. at 277-78. A claim that was not properly exhausted in state court and can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.,* procedurally barred from federal review. *See Boerckel*, 526 U.S. at 839-40, 848; *Hittson v. GDCP Warden*, 759 F.3d 1210, 1260 n.56 (11th Cir. 2014) ("Where a return to state court would be futile – because the petitioner's claims would clearly be barred by state procedural rules – a federal court can 'forego the needless judicial ping-pong' and treat unexhausted claims as procedurally defaulted." (*quoting Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998))). Federal courts also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See Coleman v. Thompson*, 501 U.S. 722, 734-35 and n.1 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts.").

A petitioner seeking to overcome a procedural default must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental

miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497 (1991) (*citing Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "To establish 'prejudice,' a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). The *Schlup* standard is very difficult to meet:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

513 U.S. at 327.  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Id.*

Section 2254 Standard of Review

Federal courts are precluded from granting a habeas petition on a claim that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court's factual determinations are presumed correct unless  the petitioner rebuts the presumption of correctness by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[3]  Justice O'Connor described the appropriate test:

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *See Thaler v. Haynes*, 559 U.S. 43, 47 (2010); *Woods v. Donald*, 575 U.S. —, —, 135 S. Ct. 1372, 1376 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely

because it fails to cite that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants: "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the

state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). The Supreme Court described the "unreasonable application" standard this way:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington, supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86 (2011)). The § 2254(d) standard "is difficult to meet . . . because it was meant to be." *Richter*, 562 U.S. at 102.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable

application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, 576 U.S. —, —, 135 S. Ct. 2269, 2277 (2015) (quotation marks omitted).

Only if the federal habeas court finds that the petitioner satisfied § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## VOLUNTARILY DISMISSED CLAIMS

Petitioner's Ground One presents a claim of trial court error, and petitioner's Grounds Three, Four, Nine, Ten, Eleven and Twelve present claims of ineffective assistance of trial counsel. Petitioner's reply voluntarily dismisses all seven of these

claims.  (Doc. 45, pp. 11, 15, 38).  Federal habeas relief should be denied based on petitioner's voluntary dismissal.

## REMAINING CLAIMS

Ground Two      <u>"Petitioner's Life Sentences Pursuant To Section 794.011(2)(A), Florida Statutes, Violates [sic] Petitioner's United States Constitutional Right Prohibiting Cruel and Unusual Punishment Under The Eighth Amendment."  (Doc. 11, p. 6).</u>

Petitioner claims the mandatory life sentences imposed on him under Section 794.011(2) Florida Statutes, violate the Eighth Amendment's prohibition on cruel and unusual punishment because the statute allows no discretion in sentencing and the sentences are unnecessarily severe and wholly disproportionate to the nature of the offense.  (Doc. 11, p. 6).  Petitioner asserts he exhausted this claim by raising it in his direct appeal.  (*Id*.).  Respondent asserts a procedural default defense, arguing that the First DCA's silent affirmance likely reflects its imposition of a procedural bar, not a merits review, because petitioner failed to preserve the issue at the trial level.  (Doc. 39, pp. 12-17).[4]  This court need not decide the procedural default issue because even assuming to petitioner's benefit that the First DCA did not impose a

---

[4] It is undisputed and established by the record that petitioner did not raise this claim at sentencing (*see* Ex. B11, pp. 334-39), in either of his Rule 3.800(a) motions to correct sentence (*see* Ex. D1; Ex. I1), or in his Rule 3.850 motion (*see* Ex. G1).

procedural bar and instead denied the claim on the merits, petitioner fails to meet §
2254(d)'s demanding standard.

It bears noting, at the outset, that although the Florida Supreme Court's
decision in *Adaway v. State*, 902 So. 2d 746, 749 (Fla. 2005) – which upheld a
defendant's life sentence for sexual battery on a minor under the Eighth Amendment
– is not binding on this court, it illustrates that seven Justices of the Florida Supreme
Court agree that no United States Supreme Court precedent renders the mandatory
life sentence unconstitutional.  Were this court to grant petitioner relief, it would
necessarily imply that those Justices "erred so transparently that no fairminded jurist
could agree with [their] decision," *Bobby v. Dixon*, 565 U.S. 23, 24 (2011).  "If
nothing else, that improbable outcome illustrates the uphill battle [petitioner] faces."
*Shelton v. Sec'y, Dep't of Corr.*, 691 F.3d 1348, 1354 (11th Cir. 2012) (referring to
a habeas petitioner's burden in challenging the constitutionality of a Florida statute
that eliminated mens rea as an element of drug distribution offenses, after the Florida
Supreme Court addressed the issue in a separate case and upheld the statute under
the Due Process Clause).

A.    Clearly Established Federal Law

In *Rummel v. Estelle*, the Supreme Court recognized that "the Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime," but "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare."  445 U.S. 263, 271-72 (1980); *see also id.* at 274 (noting a "reluctance to review legislatively mandated terms of imprisonment").  In *Solem v. Helm*, the Supreme Court held "that a criminal sentence must be proportionate to the crime for which the defendant has been convicted."  463 U.S. 277*,* 290 (1983).  According to *Solem*, proportionality review under the Eighth Amendment entails consideration of the following factors: "(1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for the commission of the same crime in other jurisdictions."  *Id.* at 292.  The Court characterized the first factor as one that "a court must consider" but characterized the remaining two factors as ones that "may be helpful" or "useful" to the analysis.  *Id*. at 291.

The Supreme Court later questioned *Solem*'s proportionality requirement.  *See Harmelin v. Michigan*, 501 U.S. 957, 965 (1991) (plurality opinion) ("We conclude

from this examination that *Solem* was simply wrong; the Eighth Amendment contains no proportionality guarantee.").  More recently, however, the Supreme Court clarified *Solem* and *Harmelin*, ruling that "one governing legal principle emerges as 'clearly established' under § 2254(d)(1): A gross disproportionality principle is applicable to sentences for terms of years." *Andrade*, 538 U.S. at 72; *see also Ewing v. California*, 538 U.S. 11 (2003) (applying "gross disproportionality" standard to Eighth Amendment challenge to sentence for term of years).  The Supreme Court acknowledged, however, that "the precise contours of [the gross disproportionality principle] are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Andrade*, 538 U.S. at 73.  The other very general principle that can be distilled from the Court's cases in this area is that courts must give "substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." *Solem*, 463 U.S. at 290.

B.    Section 2254 Review of State Court's Decision

Petitioner must demonstrate that the First DCA's rejection of his Eighth Amendment claim was contrary to, or an unreasonable application of, Supreme Court precedent.  The United States Supreme Court has never held that a mandatory

life sentence imposed upon an adult's conviction of sexually battering a child violates the Eighth Amendment. Absent a Supreme Court case directly on point or a case so closely analogous that fairminded jurists would agree that its rule must extend to the present scenario, the United States Supreme Court's acknowledgment of lack of clarity in the "gross disproportionality principle" effectively answers the AEDPA inquiry in Florida's favor. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, let alone one in Van Patten's favor, it cannot be said that the state court unreasonably applied clearly established federal law.") (internal quotation marks omitted); *Schriro v. Landrigan*, 550 U.S. 465, 478 (2007) (holding that the state court did not unreasonably apply federal law because "we have never addressed a situation like this."); *Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here," the denial of relief by the California Court of Appeal "was not contrary to or an unreasonable application of clearly established federal law.").

Petitioner argues that the First DCA's rejection of his claim was an unreasonable application of *Solem, supra*, *Coker v. Georgia*, 433 U.S. 584 (1977),

and *Harmelin, supra*.  (Doc. 45, pp. 11-15).  This argument is without merit.  *Coker* involved a sentence of **death**.  The Supreme Court recognizes that "[its] decisions applying the prohibition of cruel and unusual punishments to capital cases are of limited assistance in deciding the constitutionality of [sentences of imprisonment]." *Rummel*, 445 U.S. at 272.

The *Harmelin* case does not support petitioner's claim, because the Supreme Court in *Harmelin* held that a life sentence without parole for a defendant who possessed 672 grams of cocaine did **not** violate the Eighth Amendment.  *Harmelin*, 501 U.S. 957.  To find that the First DCA unreasonably applied *Harmelin*, this court would have to conclude that it was objectively unreasonable for the First DCA to find that an adult's oral union with the penis of an eleven-year-old boy is an objectively **lesser** offense than possessing a pound and a half of cocaine.  This court cannot draw such an unreasonable conclusion.  Petitioner's repeated acts of sexual abuse on a child, more than arguably constitutes a much **greater** offense.

*Solem* is the only Supreme Court case where a sentence was considered cruel and unusual punishment (i.e., grossly disproportionate) solely because of its length. *Id*. at 290; *see also Adaway*, 902 So. 2d at 751 (noting that *Solem* is "the lone case in which the Supreme Court has invalidated a prison sentence because of its length").

In *Solem*, the Court held that a life sentence without the possibility of parole for fraudulently writing a $100 check violated the Eighth Amendment. The Florida Supreme Court applied *Solem*, *Harmelin*, *Rummel* and *Ewing* to facts identical to those here – an adult defendant's mandatory life sentence without the possibility of parole for having oral union with the sexual organ of an eleven-year-old.[5] *Adaway*, 902 So. 2d at 749-52. The Florida Supreme Court concluded that the sentence was not grossly disproportionate to the offense. *Id*. at 750-52. In reaching this conclusion, the *Adaway* Court discussed, at length, the gravity of the crime of child sexual abuse, citing research that child sexual abuse leaves lifelong emotional scars and hardship on its victims; that it can "transmit its injuries across generations"; and that it "is especially harmful to **young** victims." *Adaway*, 902 So. 2d at 750-52 (emphasis added) (citations discussing victim impact research omitted). The undersigned is confident the Florida Supreme Court would apply the same analysis to a vile assault by a grown man on an eleven-year-old boy.

It is highly likely, if not certain, that the First DCA adopted the Florida Supreme Court's analysis in *Adaway* to conclude that (1) a life sentence without

---

[5] Mr. Adaway touched his tongue to the vagina of an eleven-year-old girl. *Adaway*, 902 So. 2d at 747.

parole is not grossly disproportionate to the crime of child sexual battery; (2) the Florida Legislature's judgment about the gravity of the crime and that child sexual battery warrants a lifelong penalty is entitled to deference; and (3) petitioner's life sentence for performing fellatio on an eleven-year-old boy is not grossly disproportionate to his crime. "The gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Andrade*, 538 U.S. at 77. In applying this principle for § 2254(d)(1) purposes, it was not an unreasonable application of clearly established Federal law for the First DCA to uphold petitioner's life sentence under the Eighth Amendment.

| Ground Five | "Defense Counsel Violated Petitioner's United States Constitutional Fourteenth Amendment Right To Due Process Of Law And His Sixth Amendment Rights To Effective Assistance Of Counsel Based On The Fact That Counsel Failed To Notify Trial Court Of Sleeping Juror." (Doc. 11, p. 11). |
|---|---|

Petitioner claims he informed trial counsel "numerous times" that Juror Hornes "appeared to be sleeping during critical testimony given throughout the trial", but counsel failed to notify the trial court. (Doc. 11, p. 11). Petitioner argues he was prejudiced because he was essentially convicted by a jury of five and "had counsel alerted the Court, the alternate juror could have taken Ms. Hornes[']s place." (*Id.*, p. 12).

The parties agree that petitioner presented this claim to the state courts in his Rule 3.850 proceeding; that the state circuit court denied relief on the merits; and that the First DCA summarily affirmed without explanation. (Doc. 11, p. 12; Doc. 39, pp. 20-21, 66). The First DCA's summary affirmance is considered an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

A.    Clearly Established Federal Law

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set out a two-pronged standard for ineffective assistance of counsel claims. The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See Strickland*, 466 U.S. at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness. Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (*quoting Strickland*, 466 U.S. at 694).

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)). "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Titlow*, 571 U.S. at 23 (quotation marks and alterations omitted).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different result. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* "The

likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. As the Court in *Richter* explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.
>
> *Id.* (citations omitted).

B.    Section 2254 Review of State Court's Decision

Where, as here, there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, federal habeas courts employ a "look through" presumption, described by the Supreme Court as follows: "[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale.  It should then presume that the unexplained decision adopted the same reasoning."  *Wilson v. Sellers*, — U.S. —, 138 S. Ct. 1188, 1192 (2018).

The state circuit court utilized the *Strickland* standard, (Ex. G1, p. 75), and rejected petitioner's claim (raised as Ground 3 of his Rule 3.850 motion) for these reasons:

> As to Ground 3, Defendant alleges that trial counsel was ineffective for failing "to notify the trial court of sleeping juror."  This claim is merely language parroted from *Williams v. State*, 80 So. 3d 1102 (Fla. 4th DCA 2010).  In his motion, Defendant alleges that
>
> > [c]ounsel was ineffective in failing to notify the trial court that a juror was sleeping during critical testimony.  [He] avers he informed counsel numerous times that one of the jurors was sleeping, however, counsel failed to bring this information to the trial court's attention, so that, in effect, [he] was convicted by a jury of five.  [He] avers he was prejudiced because, had counsel alerted the court, the alternate juror could have taken the sleeping juror's place.

*See* Motion for Post-Conviction Relief at 20.   The Fourth DCA's opinion in *Williams* reads as follows:

> The first ground of his timely rule 3.850 motion – which was reiterated in his timely amended motion, after the first motion was denied without prejudice to amend – was ineffective assistance of counsel in **failing to notify the trial court that a juror was sleeping during critical testimony.**  Defendant alleged **he informed trial counsel numerous times that one of the jurors was sleeping, but counsel failed to bring this information to the trial court's attention so that, in effect, he was convicted by a jury of five.**  Defendant argued that he **was prejudiced because, had counsel alerted the court, the alternate juror could have taken the sleeping juror's place.**

*Williams*, 80 So. 3d at 1103 (emphasis added).   Defendant's *entire* claim is language cut-and-paste [sic] from *Williams*.  Defendant fails to allege *which juror* was allegedly sleeping during *what critical testimony* on *which day* of the *two-day* trial.  He also fails to allege *which of his two attorneys* he purportedly informed of the sleeping juror.  Accordingly, this Court finds defendant's claim to be inherently incredible and without merit.

(Ex. G1, pp. 79-80) (alterations and emphasis in original).

Petitioner's initial brief on appeal from the circuit court's order attempted to

fill the gaps noted by the lower court.  Petitioner added:

> [T]he sleeping juror's name was Ms. Hornes, juror six, the only woman on the jury's panel, and was sitting in the front row.  She was an African-American woman in her 40's.  She was sleeping during an earlier section of the trial on the first day of trial during the testimony of [B.B.], the complainant, victim, and State's main witness.  Both lead defense counsel, Justin Rickman, AND Co-Counsel, Shon Douctre,

were notified.  First, Justin Rickman was notified, who failed to object.
At that point, the Defendant immediately notified Shon Douctre, who
stated that he would let Justin Rickman know, which he did not.  No
trial objection was made by either defense counsel.  (The Defendant
was sitting in the middle between Justin Rickman and Shon Douctre at
trial).

(Ex. G6, pp. 14-15).

The First DCA's rejection of petitioner's claim was a reasonable application
of *Strickland*.  Petitioner provided the lower court with no facts <u>specific to his case</u>
to support his claim, and instead relied on general allegations copied verbatim from
the *Williams* case he cited.  Although on appeal petitioner attempted to bolster his
claim by adding facts about the juror and counsel's response, the First DCA
reasonably could have concluded that even petitioner's amplified allegations failed
to satisfy *Strickland*.

First, petitioner provided no evidence that Juror Hornes was in fact sleeping
as opposed to, say, concentrating with eyes closed.  Second, accepting as true
petitioner's assertions that Hornes was sleeping and both defense attorneys heard his
complaint and declined to act, petitioner's allegations fail to overcome the strong
presumption that counsels' decision not to raise the issue was reasonable.  An
effective defense counsel can decide not to raise the issue of an inattentive or
sleeping juror.  *See Lamar v. Graves*, 326 F.3d 983, 986 (8th Cir. 2003) (holding

that state court did not unreasonably apply *Strickland* when it concluded that trial counsel's decision not to object to a sleeping juror during a portion of State's case was reasonable; counsel explained he did not mind if the juror missed part of the State's presentation); *United States v. Springfield*, 829 F.2d 860, 864 (9th Cir. 1987) (holding that not every incident of juror misconduct, including a sleeping juror, requires a new trial); *see also e.g., Ciaprazi v. Senkowski*, 151 F. App'x 62, 63-64 (2d Cir. 2005) (holding that trial counsel's decision not to object to a possibly sleeping juror may well have been based on his desire to retain the inattentive juror rather than seek to replace him with an alternate – a decision that would have been a reasonable strategic decision); *Guinyard v. Keane*, 56 F. App'x 44, 46 (2d Cir. 2003) ("[E]ven if trial counsel saw a distracted juror, it was among the objectively reasonable strategic choices for counsel to forgo an objection."); *Gaston v. MacFarland*, 2005 WL 1828660, at *8 (D. N.J. July 29, 2005) ("Conflating a juror's claimed inattentiveness with a defense attorney's ineffectiveness in no way demonstrate[s] that his counsel's performance was deficient as measured by an objective standard of reasonableness 'under prevailing professional norms' or that petitioner was prejudiced by the performance.").

Lastly, and significant to both prongs of the *Strickland* standard, although petitioner asserts Juror Hornes missed "critical" evidence because she was inattentive during a portion of B.B.'s direct testimony, the trial transcript demonstrates that virtually every material fact of B.B.'s direct testimony was reiterated during the State's publishing of the videotape of B.B.'s interview at the Child Advocacy Center on September 16, 2008. In that interview, B.B. described in detail each of the four occasions petitioner performed fellatio on him. (*See* Ex. B9, pp. 11-70). On this record, the court cannot say that no "fairminded jurist could agree" with the state court's determination that petitioner failed to establish deficient performance and prejudice under *Strickland*. Petitioner is not entitled to habeas relief on Ground Five.

Ground Six      "Defense Counsel Violated Petitioner's United States Constitutional Fourteenth Amendment Right To Due Process Of Law And His Sixth Amendment Rights To Effective Assistance Of Counsel When Counsel Failed To Conduct A Meaningful Voir-Dire." (Doc. 11, p. 13).

Petitioner alleges trial counsel was ineffective during voir dire because he failed to ask prospective jurors "whether any of them had been a victim of sexual abuse child molestation, or knew someone who was either of the above." (Doc. 11,

p. 13). Petitioner asserts that as a result of counsel's deficient questioning, a biased juror sat on his jury.

Respondent argues a procedural default defense, claiming that although petitioner apprised the state postconviction trial court of the federal constitutional nature of his claim by citing the Sixth and Fourteenth Amendments, he did not include those citations in his postconviction appellate brief, thereby depriving the First DCA of the opportunity to resolve the constitutional issue. (Doc. 39, pp. 21-23). Respondent asserts that even if this court finds in petitioner's favor on the exhaustion issue, petitioner's claim fails because he fails to show that the state court's rejection of the claim was contrary to, or an unreasonable application of, the *Strickland* standard. (*Id*., pp. 68-75). The court need not decide the procedural default issue, because even assuming to petitioner's benefit that he fairly presented the federal constitutional nature of his claim to the First DCA in his postconviction appeal, the First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d), and petitioner fails to meet § 2254(d)'s demanding standard.

A.    Clearly Established Federal Law

The clearly established federal law governing ineffective assistance of counsel claims is the *Strickland* standard articulated above.

B.    Section 2254 Review of State Court's Decision

This court applies *Wilson*'s "look-through" presumption to the First DCA's summary affirmance.  The state circuit court utilized the *Strickland* standard, (Ex. G1, p. 75), and rejected petitioner's claim (raised as Ground 4 of his Rule 3.850 motion) for these reasons:

> As to Ground 4, Defendant alleges that trial counsel was ineffective for failing "to conduct a meaningful voir dire."  According to Defendant, counsel, the State, and the court collectively failed to inquire as to whether any of the prospective jurors "has been a victim of sexual abuse or child molestation, or knew someone who was."
>
> Defendant is correct that neither his counsel, the State, or the court specifically asked the jury as a whole or individually if they had been victims of sexual abuse or knew someone that had been a victim of sexual abuse.  However, at least one prospective juror indicated that he knew someone who had been molested.  And, that prospective juror did not serve on Defendant's jury.  *See* Motion Hearing, Jury Selection and State's Opening Transcript at 154 (lines 1-25) – 156 (lines 1-25), 158 (lines 20-25) – 160 (lines 1-25), 167 (lines 1-6).
>
> This Court additionally notes that "postconviction relief cannot be granted in this context unless the lawyer's error resulted in a jury that was not impartial."  *Yanes v. State*, 960 So. 2d 834, 835 (Fla. 3d DCA 2007).  "[P]ost-conviction relief based on a lawyer's incompetence with regard to the composition of the jury is reserved for

a narrow class of cases where prejudice *is apparent from the face of the record*, where a biased juror *actually* served on the jury." *Davis v. State*, 892 So. 2d 1073, 1075 (Fla. 2d DCA 2004 (emphasis added) (citing *Jenkins v. State*, 824 So. 2d 977, 982 (Fla. 4th DCA 2002)). "Only where a juror's bias is so clear can a defendant show the necessary prejudice. . . ." *Jenkins v. State*, 824 So. 2d 977, 982 (Fla. 4th DCA 2002). "Thus, to satisfy the prejudice prong of *Strickland*, a defendant must show that a juror who served on the jury 'was actually biased against him.'" *Carratelli v. State*, 915 So. 2d 1256, 1260 (Fla. 4th DCA 2005) (quoting *Miller v. Webb*, 385 F.3d 666, 674 (6th Cir. 2004)). Here, Defendant fails to point to any juror who served on his jury being actually biased against him. Defendant's claim is based on nothing more than speculation and conjecture. He fails to show any evidence of actual bias. For this reason, Defendant has not shown either error by counsel or prejudice. Accordingly, the claim raised is without merit.

(Ex. G1, pp. 80-81). On appeal, petitioner provided more facts. Petitioner again identified Juror Hornes as the allegedly biased juror, but instead of relating her bias to personal experience with sexual abuse (and faulting counsel's voir dire), petitioner's claim on appeal took a different direction. Petitioner faulted counsel for failing to strike Hornes after voir dire due to her response when asked how she would feel if the defense did not present any evidence. (Ex. G6, p. 20 (petitioner's postconviction appellate brief)). Petitioner pointed to this exchange during voir dire:

MR. DOUCTRE [Defense Counsel]: . . . What about you, Ms. Hornes? Do you believe that if Mr. O'Brien does not take the stand or we don't provide witnesses, that that is going to be somewhat in your mind? Even though you're instructed not to hold that against him, do you believe that it might or would or could?

PROSPECTIVE JUROR HORNES:  Yes, it would.

MR. DOUCTRE:  And how do you think you would hold that against him?

PROSPECTIVE JUROR HORNES:  Basically just by not having anyone or himself come on the stand, it's like I have nothing from your side other than not guilty.

THE COURT:  Mr. Douctre, if you're going to go down the line with everybody, let me put this issue to them in a different way.  What they've heard is coming from an attorney.  I'm going to say the same thing a little more briefly but coming from the judge, and I can tell you that it absolutely is the law in this country that a defendant has zero burden, zero.  The sole burden is on the state.  And you're going to get an instruction at the end of the trial that says you cannot even consider the fact that a defendant did or did not take the witness stand to testify.  In other words, the law is that you cannot be influenced by the fact that a defendant did not testify.  That's the law.  So the question, in a different way of phrasing it, is can you follow that law?

PROSPECTIVE JUROR HORNES:  Yes.

THE COURT:  Put it to you that way, is it different?

PROSPECTIVE JUROR HORNES:  Yes, I can follow the law.  Yes, I can follow the law.

MR. DOUCTRE:  Okay.  So knowing that you could follow the law, would it affect you negatively?

PROSPECTIVE JUROR HORNES:  By following just the law, no, but personally, emotionally, yes, but following the law, no.

MR. DOUCTRE:  Okay.  That answer is very reasonable and honest.

(Ex. B8, pp. 495-97 (transcript of voir dire); Ex. G6, p. 20 (petitioner's postconviction appellate brief)).

Even assuming to petitioner's benefit that the First DCA considered this modified claim – never presented to the lower court – the First DCA's rejection of this claim was consistent with *Strickland*. To show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694, petitioner must show that Juror Hornes was biased; if she were not, then there is no "reasonable probability that . . . the result of the proceeding would have been different." *Id*.; *see also e.g., Owen v. Fla. Dep't of Corr.*, 686 F.3d 1181, 1201 (11th Cir. 2012) (applying identical standard to claim that counsel was ineffective during jury selection).

Petitioner did not show Juror Hornes was biased. There is no evidence that she or someone she knew was a victim of sexual abuse.[6] Additionally, the voir dire exchange quoted above rebuts, rather than supports petitioner's allegation that Juror Hornes was biased against defendants who do not present evidence. Hornes

---

[6] Petitioner's habeas reply makes yet another new allegation. Petitioner alleges that Juror Hornes "did speak up and say that her nephew had been molested as a child." (Doc. 45, p. 25 (citing Ex. B8, p. 513)). Petitioner is incorrect. It was Prospective Juror Lewin who reported that his nephew was molested as a child. (Ex. B8, p. 513). Mr. Lewin did not serve on petitioner's jury. (*See* Ex. B8, p. 526).

answered counsel's and the court's questions in a manner indicative of an unbiased juror, and unequivocally affirmed she would follow the law.  The trial court's instructions on the law included:

> The defendant has entered a plea of not guilty.  This means that you must presume or believe the defendant is innocent.   The presumption stays with the defendant as to each material allegation in the information through each stage of the trial unless it has been overcome by the evidence to the exclusion of and beyond a reasonable doubt.
> . . . .
>
> The defendant is not required to present evidence or prove anything.
>
> . . . .
>
> It is the evidence introduced in this trial and to it alone that you are to look for that proof [beyond a reasonable doubt].
>
> . . . .
>
> The constitution requires the state to prove its accusations against the defendant.  It is not necessary for the defendant to disprove anything nor is the defendant required to prove his innocence.  It is up to the state to prove the defendant's guilt by evidence.
>
> The defendant exercised a fundamental right by choosing not to be a witness in this case.  You must not view this as an admission of guilt or be influenced in any way by his decision.  No juror should ever be concerned that a defendant did or did not take the witness stand to give testimony in the case.

What follows are some general rules that apply to your discussion. You must follow these rules in order to return a lawful verdict:

You must follow the law as set out in these instructions. If you fail to follow the law, your verdict will be a miscarriage of justice. There is no reason for failing to follow the law in this case. All of us are depending on you to make a wise and legal decision in this matter.

. . . .

This case must not be decided for or against anyone because you feel sorry for anyone or are angry at anyone.

. . . .

Your verdict should not be influenced by feelings of prejudice, bias or sympathy. Your verdict should be based on the evidence and on the law contained in these instructions.

. . . .

In closing, let me remind you that it's important that you follow the law spelled out in these instructions in deciding your verdict. There are no other laws that apply to this case. Even if you don't like the laws that must be applied, you must use them. For over two centuries we have lived by the constitution and the law, and no juror has the right to violate the rules we all share.

(Ex. B11, pp. 319-25). Because jurors are presumed to follow the court's instructions, it was not objectively unreasonable to conclude that Juror Hornes based her verdict solely on the evidence presented and the law as instructed by the judge.

*See Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001) ("Because we presume

that the jurors followed the court's instructions to base their sentencing decision on the evidence and the law, and not on arbitrary factors, Brown's attempt to prove prejudice is undermined." (*citing Ingram v. Zant*, 26 F.3d 1047, 1053 (11th Cir. 1994))).  Petitioner has not shown deficient performance or prejudice during jury selection.

The state court's rejection of petitioner's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard.  Nor was the decision based on an unreasonable determination of the facts.  Petitioner is not entitled to habeas relief on Ground Six.

Ground Seven        "Defense Counsel Violated Petitioner's United States Constitutional Fourteenth Amendment Right To Due Process Of Law And His Sixth Amendment Rights To Effective Assistance Of Counsel When Counsel Failed To Investigate And Present Witnesses As To The Corruption And Missing Evidence In The Alachua County Evidence."  (Doc. 11, p. 14).

Petitioner alleges that after jury selection, he handed defense counsel a packet containing articles from the Gainesville Sun reporting an investigation of the Alachua County Sheriff's Office Evidence Room by the Internal Affairs Division of the Office of Professional Standards.  Petitioner alleges the investigation revealed misconduct by two evidence custodians: Tommie Raulerson and Charlie Smith.  According to petitioner, the investigation involved the disappearance of 118 items

of evidence, including "missing currency," "missing pornography and a blow-up-doll." (Doc. 11, p. 15). Petitioner asserts that counsel "had a duty/obligation to investigate this corruption and to determine if the missing pornography ended up on Petitioner's laptop and if Mr. Raulerson or Mr. Smith had direct access to Petitioner's laptop". (*Id*.).

Respondent asserts the same procedural default and alternative merits defenses as in Ground Six, above. (Doc. 39, pp. 23-24, 75-80). The court need not decide the procedural default issue, because even assuming to petitioner's benefit that he fairly presented the federal constitutional nature of his claim to the First DCA in his postconviction appeal, the First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d), and petitioner fails to meet § 2254(d)'s demanding standard.

A.   Clearly Established Federal Law

The clearly established federal law governing ineffective assistance of counsel claims is the *Strickland* standard articulated above.

B.   Section 2254 Review of State Court's Decision

This court applies *Wilson*'s "look-through" presumption to the First DCA's summary affirmance. The state circuit court utilized the *Strickland* standard, (Ex.

G1, p. 75), and rejected petitioner's claim (raised as Ground 5 of his Rule 3.850

motion) for these reasons:

> As to Ground 5, Defendant alleges that trial counsel was
> ineffective for failing "to investigate and present witnesses as to the
> corruption and missing evidence in the Alachua County evidence
> room." According to defendant, an investigation of evidence room
> employees at the Alachua County Sheriff's Office was conducted
> during the time that his laptop was being held there. The investigation
> resulted in one employee resigning and one employee being terminated.
> Defendant contends that given the issues in the evidence room it is
> possible someone could have placed pornography on his computer
> while it was being stored there. And, that counsel should have
> investigated this possibility. This claim is based on nothing more than
> speculation and conjecture. There is no factual basis for the claim that
> someone placed pornography on Defendants' [sic] computer while it
> was being stored in the evidence room at the Alachua County Sheriff's
> Office. Regardless, during trial, the State's expert conceded that, based
> on his limited investigation, he could not say who put the pornography
> on defendant's computer. *See* Trial Transcript at 225 (lines 4-25) – 226
> (lines 1-20), 233 (lines 14-20). It is likely however that had counsel
> alleged possible tampering the State would have conducted a more
> thorough analysis of Defendant's computer. For these reasons,
> Defendant fails to show either error by counsel or prejudice.

(Ex. G1, pp. 81-82).

The state court's reasoning was consistent with *Strickland*. Petitioner's claim

to the state circuit court was purely speculative, which is insufficient to satisfy

*Strickland*. *See Brownlee v. Haley*, 306 F.3d 1043, 1060 (11th Cir. 2002) (holding

that "[s]peculation is insufficient to carry the burden of a habeas corpus petitioner as

to what evidence could have been revealed by further investigation" (alteration in original) (internal quotation marks and citation omitted)).

As with his other claims, petitioner expanded his allegations in his postconviction appeal by alleging that Tommie Raulerson had access to his laptop. Petitioner alleged:

> [Tommie Raulerson] was the Evidence Custodian that checked in the Gateway laptop back from the forensic examiner (who would have been Charles Snipes) on December 22, 2008 who had recently examined the computer, so Mr. Raulerson knew then, at that time, a computer from a sex offense case was available to play with.

(Ex. G6, p. 24 (appellate brief); Ex. G7, Ex. L (Evidence Detail Report attached to appellate brief)).  Petitioner's additional allegations come no closer to satisfying the *Strickland* standard, because petitioner admits that Mr. Snipes performed his forensic analysis and discovered the pornography on petitioner's laptop <u>before</u> Raulerson was part of the chain of custody.  Any subsequent "tampering" with the laptop by Raulerson would not have affected Snipes' previous examination and discovery of child pornography.

The state court reasonably concluded that petitioner failed to establish deficient performance and prejudice arising from counsel's failure to investigate

Raulerson's custody of the laptop.  Petitioner is not entitled to habeas relief on Ground Seven.

Ground Eight "Petitioner's United States Constitutional 14th Amendment Right To Due Process Of Law When State Committed Prosecutorial Misconduct During Their Closing Argument Resulting In Reversible Error And Counsel His Sixth Amendment Rights To Effective Assistance Of Counsel When He Was Ineffective By Failing To Object To State's Errors." (Doc. 11, p. 16).

Petitioner's final claim is that counsel was ineffective for failing to object to comments by the prosecutor during his rebuttal closing argument.  (Doc. 1, pp. 16-17).  Respondent asserts the same procedural default and alternative merits defenses as in Grounds Six and Seven, above.  (Doc. 39, pp. 25-26, pp. 80-86).  The court need not decide the procedural default issue, because even assuming to petitioner's benefit that he fairly presented the federal constitutional nature of his claim to the First DCA in his postconviction appeal, the First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d), and petitioner fails to meet § 2254(d)'s demanding standard.

 A. Clearly Established Federal Law

The clearly established federal law governing ineffective assistance of counsel claims is the *Strickland* standard articulated above.

B.    Section 2254 Review of State Court's Decision

Applying *Wilson*'s "look-through" presumption, the First DCA's rejection of

petitioner's claim was neither contrary to, nor an unreasonable application of the

*Strickland* standard.  The state circuit court utilized the *Strickland* standard, (Ex. G1,

p. 75), and rejected petitioner's claim (raised as Ground 6 of his Rule 3.850 motion)

for these reasons:

> As to Ground 6, Defendant alleges that the "State committed prosecutorial misconduct during their closing argument resulting in reversible error, and counsel failed to object to [the] State's error." *See* Trial Transcript at 258-284, 307-317.  "Wide latitude is permitted in arguing to a jury." *Breedlove v. State*, 413 So. 2d 1, 8 (Fla. 1982). Here, "the prosecutor [was] merely submitting to the jury a conclusion that he or she [was] arguing [could] be drawn from the evidence." *Davis v. State*, 698 So. 2d 1182, 1190 (Fla. 1997). The State is "allowed to argue reasonable inferences from the evidence and to argue credibility of witnesses or any other relevant issue so long as the argument is based on the evidence." *Miller v. State*, 926 So. 2d 1243, 1254-55 (Fla. 2006).  For this reason, Defendant fails to show either error by counsel or prejudice.  Accordingly, the claim raised is without merit.

(Ex. G1, p. 82) (alternation in original).

The undersigned reviewed the evidence adduced at trial and the entirety of the

closing arguments.  The state court reasonably determined that defense counsel was

not ineffective for failing to object, because an objectively reasonable trial lawyer

could conclude the prosecutor argued from facts in evidence and reasonable

inferences from those facts.  The state court also determined, reasonably, that petitioner failed to establish a reasonable probability the result of his trial would have been different had counsel objected.  Petitioner is not entitled to federal habeas relief on Ground Eight.

## CONCLUSION

Petitioner's Grounds One, Three, Four, Nine, Ten, Eleven and Twelve are voluntarily dismissed.  Ground Two is procedurally defaulted.  Grounds Five, Six, Seven and Eight fail to meet § 2254(d)'s demanding standard.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537

U.S. at 336 (*quoting* 28 U.S.C. § 2253(c)).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774 (2017) (*quoting Miller-El*, 537 U.S. at 327).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604, 146 L. Ed. 2d 542 (2000) (emphasis added).  The petitioner here cannot make the requisite showing.  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a).  If there is an objection to this recommendation

by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.  That the amended petition for writ of habeas corpus (doc. 11), challenging the judgment of conviction and sentence in *State of Florida v. Kenneth O'Brien*, Alachua County Circuit Court Case No. 2008-CF-4088, be DENIED.

2.  That the clerk be directed to close the file.

3.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 5th day of October, 2018.


*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.